SO ORDERED: March 01, 2007.

_____
**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TODD MICHAEL DORSEY and | ) | Case No. 05-73752-BHL-13 |
| DENIM SHLENA DORSEY, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER ON TREATMENT OF 910 VEHICLE IN DEBTORS' CHAPTER 13 PLAN

This matter comes before the Court on the **Motion to Correct Order of Confirmation or Alternatively to Set Aside Order of Confirmation** (the "Motion") filed by Wells Fargo Financial Acceptance ("WFFA"). On August 9, 2006, the Court entered an order setting aside the confirmation order in the Debtors' chapter 13 case as to WFFA and directing the parties to brief the issue as to the proper treatment of WFFA's claim in the Debtors' plan.

Background

WFFA's claim stems from funds advanced by WFFA to the Debtors within the 910 days prior to the Debtors filing this bankruptcy case for the purpose of enabling the Debtors to purchase a vehicle for their personal use. As of the petition date, the balance owed by the Debtors to WFFA

under the contract was $29,096.54 at 9% interest. In their chapter 13 plan (the "Plan"), the Debtors proposed to pay WFFA $18,825, the value of the vehicle at that time, at 9%, with the balance to be paid in full without interest. WFFA objected to this treatment.

The question before the Court is what treatment the bankruptcy code as amended by the Bankruptcy Abuse and Consumer Protection Act ("BAPCPA") requires the Debtors to provide in their plan to WFFA as a creditor holding a perfected purchase money security interest in a vehicle purchased with that purchase money within the 910 days preceding the Debtors' chapter 13 petition.

Section 1325 of the bankruptcy code provides that:

> (a) [T]he court shall confirm a plan if - (5) with respect to each allowed secured claim provided for by the plan - (B)(i) the plan provides that - (I) the holder of such claim retain the lien securing such claim until the earlier of - (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328; and ... (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

11 U.S.C. § 1325(a)(5)(B)(ii).

That is, if a secured creditor objects to its treatment under a debtor's chapter 13 plan, the debtor's plan nevertheless shall be confirmed by the court if the debtor provides to the objecting creditor payments over the course of the plan that are equal in value to the full amount of the creditor's allowed secured claim.

Prior to the enactment of the BAPCPA amendments, the holder of a secured claim may have had his secured claim bifurcated under § 506 of the code into two distinct claims: a secured claim in the amount of the value of the collateral to which his lien attached, and an unsecured claim in the amount of the difference between the value of the collateral and the total amount of

the original claim. It was to the allowed secured claim in the amount of the value of the collateral that § 1325(a)(5)(B)(ii) applied.

BAPCPA amended § 1325(a) by inserting at the end of that code section what has come to be known as the "hanging paragraph," so called because the drafters of BAPCPA failed to give the paragraph a subsection designation: it simply hangs at the end of § 1325(a). The hanging paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for the debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]

What this paragraph means has been the subject of a plethora of opinions, and the parties here have staked positions in the two most prevalent interpretive camps.

### The Debtors' Position

Because the hanging paragraph of § 1325(a) states that § 506 does not apply to a 910 claim, a 910 claim is not a secured claim, but rather, simply a 910 claim. Because a 910 claim is not a secured claim under § 506, the holder of such a claim is not entitled to the post petition interest necessary for the net present value of the proposed plan payments to equal the allowed amount of such a claim as required under § 1325(a)(5)(B)(ii).

### WFFA's Position

Section 1325(a)(5)(B)(ii) requires a debtor's plan to treat an objecting creditor's 910 claim as a fully secured claim in the full amount of the allowed claim with interest calculated

according to the formula in Till.

## Discussion

The Debtors' argument, supported by the decisions of a number of bankruptcy courts (see, e.g., In re Carver, 338 B.R. 521 (Bankr.M.D.Ga.2006); In re Green, 348 B.R. 601, (Bankr.M.D.Ga.2006); In re Wampler, 345 B.R. 730 (Bankr.D.Kan.2006)), that the hanging paragraph renders § 506 inapplicable to 910 vehicles and, therefore, secured status cannot trace back to that section, assumes that § 506 is the sole source of a chapter 13 claim's secured status. It is not. See, In re Trejos, 352 B.R. 249, 261 (Bankr.D.Nevada 2006).

Section 506 does provide one category of secured claims, but it is not the only secured claim provision; § 1111(b)(2), for instance, provides another. The non-application of § 506 provided for in the hanging paragraph does not alter the secured status of a 910 claim. The secured status of the 910 claim is the result of the creditor's perfected purchase money security interest under nonbankruptcy law. As the Supreme Court has recognized, a creditor's rights are initially determined by state law, which may then be altered when the debt holder enters bankruptcy. See, Butner v. U.S., 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); Raleigh v. Ill. Dept. Of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). From these cases it follows that a "creditor's secured status is dictated by state law while the treatment of secured claims is dictated by the Bankruptcy Code. As such, even though the Hanging Paragraph makes § 506 inapplicable to certain secured claims, it does not mean that claims covered by the Hanging Paragraph are no longer secured." In re Shaw, 341 B.R. 543, 546 (Bankr.M.D.N.C.2006)(emphasis supplied). See also, In re Johnson, 337 B.R. 269 (Bankr.M.D.N.C.2006); In re Montoya, 341 B.R. 41, 44 (Bankr.D.Utah 2006). Rather, the

4

hanging paragraph merely eliminates the § 506 bifurcation or "strip down" treatment of 910 claims that existed under the Code prior to the enactment of the BAPCPA amendments. Trejos, 352 B.R. at 266.

Therefore, as an allowed secured claim, a 910 claim must be treated according to the rule in § 1325(a)(5)(B)(ii) requiring the net present value of the stream of chapter 13 plan payments be equal in value to the amount of the allowed claim, i.e., post-petition interest must be paid on the 910 claim.

The formulation of the appropriate interest rate to be received post-petition by a secured creditor was set forth in Till v. SCS Credit Corporation., 541 U.S. 465, 124 S.Ct. 1951, 158 L/Ed.2d 787 (2004), requiring courts to begin with the prevailing prime rate, and then adjust for the perceived risk of default posed by the debtor. The BAPCPA amendments did nothing to alter the applicability of the Till formula. See, e.g., In re Brooks, 344 B.R. 417, 422 (Bankr.E.D.N.C.2006) ("As the hanging paragraph does not prevent the application of § 1322(b)(2) to 910 claims, the court finds that the interest on such claims does not have to be calculated at the contract rate.); In re Fleming, 339 B.R. 716, 723-24 (Bankr.E.D.Mo.2006) ("A creditor whose claim comes within the 910 Day Car Language contained in Section 1325(a)(9) of the Bankruptcy Code is entitled to receive post-petition interest at a current rate determined by an adjustment from the prime rate based on the risk of nonpayment under Till."); In re Shaw, 341 B.R. 543, 547 (Bankr.M.D.N.C.2006) ("[G]iven Congress's knowledge of the Till decision and Congress's decision not to change the applicable statutory language when enacting BAPCPA, this court concludes that the Till rate remains the proper interest rate with which secured claims must be paid to meet the requirements of § 1325(b)(5)(B)(ii)."); In re Wright, 338 B.R. 917, 920

(Bankr.M.D.Ala.2006) ("The BAPCPA amendments to § 1325 simply do not address the issue of the appropriate interest rate applicable to secured claims under § 1325(a)(5)(B)(ii).  Thus Till has not been abrogated by the BAPCPA amendments.")

In their plan, the Debtors prosed to pay interest on the secured portion of WFFA's bifurcated claim at the rate of 9%, three-quarters of a percentage point higher than the prevailing prime rate of 8.25%.  WFFA has consented to this rate if applied to the full allowed secured amount, the contract price of $29,096.54.

### Conclusion

Based upon the discussion above, the court finds that WFFA's 910 claim is an allowed secured claim in the amount of the contract balance of $29,096.54, and that under 11 U.S.C. § 1325(a)(5)(B)(ii), in order to be confirmed, the Debtors' plan must provide for payment to WFFA of interest at the rate of 9% on that amount.

###

Distribution:
Debtors' counsel
WFFA's counsel
Chapter 13 Trustee